Robert D. LITZ, Petitioner/
Respondent,

v.

Tracey E. LITZ, Respondent/Appellant.

No. ED 91545.

Missouri Court of Appeals,
Eastern District,
Division Three.

April 28, 2009.

Cary J. Mogerman, Joseph Jerome Kodner, Saint Louis, MO, for Petitioner/Respondent.

Clyde C. Farris, Jr., Stephen C. Hiotis, Saint Louis, MO, for Respondent/Appellant.

Before ROBERT G. DOWD, JR., P.J., CLIFFORD H. AHRENS, J., and SHERRI B. SULLIVAN, J.

SHERRI B. SULLIVAN, J.

*Introduction*

Tracey E. Litz (Appellant) appeals from the judgment of the trial court dissolving her marriage to Robert D. Litz (Respondent). We affirm.

*Factual and Procedural Background*

Appellant and Respondent were married in 1984. Both parties are lawyers licensed to practice law in Missouri. Neither party has retired. Prior to the dissolution of their marriage, Appellant was a federal employee participating in the Civil Service Retirement System (CSRS) and Respondent was a private sector employee participating in the Social Security system.

*Employment, Retirement and Pensions*

Immediately after graduating from law school, Appellant started working as a law clerk for Judge Stephen N. Limbaugh, Sr., where she worked throughout her marriage. Respondent worked as a lawyer for ITT Commercial Finance (ITT) and ultimately for General Electric Company (GE) because GE acquired ITT. In June 2004, Respondent was laid off when GE relocated its St. Louis ITT office to Chicago. At the time of trial, Respondent was self-employed in his private law practice.

Respondent had participated in three pension plans, present values of which expert testimony was presented at trial. One pension plan was through his employment with ITT and two were through his employment at GE, one of which is referred to as "PPA/VPA" and the other as "Regular." Present values of the pension plans were calculated because Respondent did not want to have Appellant's CSRS pension divided pursuant to a Qualified Domestic Relations Order.

*Trial and Evidence*

The parties' dissolution of marriage case was tried on October 20, 2006, November 22, 2006, January 26, 2007, February 1, 2007 and January 29, 2008. Respondent's trial expert on the present value of the parties' retirement accounts was James Jennings (Jennings). His opinion is summarized on trial Exhibit 19, and because the trial resumed a month after his testimony, Exhibit 19 was updated on Exhibit 19A. Jennings testified that assuming that Appellant retired at age sixty, the present value of the marital portion of Appellant's CSRS pension was $747,229. For the second day of trial, which was about three months after the first day of trial, Jennings updated his calculations to a present value of $760,711. Jennings discounted Appellant's CSRS plan to account for its cost-of-living adjustment. Respondent's pension plans did not have cost-of-living adjustments.

Jennings followed the methodology on Respondent's three pension plans that he used for Appellant's CSRS account, except he used a twenty-year Treasury yield of 5.02 for his discount rate because Respondent's plans, unlike Appellant's CSRS plan, did not have cost-of-living adjustments. For Respondent's two GE plans, Jennings assumed retirement at age 60. Jennings testified that Respondent's GE PPA/VPA plan had a present value of $18,045; his GE "regular plan" had a present value of $42,384; and his ITT plan, assuming retirement at age 65, had a present value of $92,701.

Jennings calculated the present value of Respondent's Social Security retirement benefits to be $84,949. He followed the same methodology he used for the GE and ITT plans, except he used a retirement age of sixty-six and a half and, because Social Security has cost-of-living adjustments, he used the same discount rate he used for Appellant's CSRS account, which was 2.02 percent, instead of the 5.02 percent he had used on the GE and ITT plans. Jennings did not provide a present value calculation that assumed that Appellant had been participating in the Social Security system, instead of in CSRS.

On behalf of Appellant, John Brandvein (Brandvein) offered his expert opinion that the marital present value of Appellant's CSRS pension was $314,226. Brandvein used a discount rate of 9%, which was the average of Standard & Poor's performance for the past fifteen years. Present value goes down when a larger discount rate is used, and, conversely, present value goes up when a smaller discount rate is used.

Brandvein also offered his expert opinion that if Appellant had been participating in the Social Security system, the present value of her Social Security retirement

benefits would be $295,326. Brandvein based his calculations on: retirement at age 62, at which time she would receive annual payments of $28,210 for twenty years (based on life expectancy tables); annual cost of living increases of 2.6% (based on Social Security historic averages); and a discount rate of 2.6%. If Appellant had been employed in the private sector participating in the Social Security system, the present value of her Social Security retirement benefits would have been about the same as the present value of her CSRS retirement benefits.

Judgment was entered on May 7, 2007.[1] Respondent filed a motion to amend the judgment or for a new trial, claiming, in part, that the CSRS value was too low because Brandvein had based his present value calculations on a pension with a "survivor benefit" even though after their divorce Appellant's CSRS payments would be at a higher rate since she would not be married. The trial court sustained the motion in part, and ordered the parties to provide additional evidence on the present value of the CSRS pension.

As the result of additional testimony, on April 18, 2008, the trial court ordered the parties to submit memoranda valuing the CSRS as of May 7, 2008, without a surviv-or's benefit, with an interest rate of 4.64% per annum and a cost-of-living adjustment of 3%. Respondent submitted a memorandum valuing Appellant's CSRS at $689,604 if she retired when she was sixty years old. Appellant submitted a memorandum valuing her CSRS pension at $652,177 if she retired when she was sixty years old.

On May 20, 2008, the trial court entered its final judgment valuing the CSRS pension at $652,177, which increased its value from $399,269, and reallocating the property division to accommodate the higher CSRS pension that was allocated to Appellant.

Appellant timely filed this appeal.

### Point Relied On

Appellant maintains that the trial court erred in applying Section 452.330.1(1) and (3)[2] when it failed to consider Respondent's social security benefits in determining the division of marital property which resulted in a division so unduly weighted in favor of Respondent as to amount to an abuse of discretion.

### Standard of Review

The trial court has broad discretion in determining the distribution of

1. At the time of the May 7, 2007 judgment, both parties were 49 years old.

2. All statutory references are to RSMo 2006, unless otherwise indicated.
Section 452.330.1 provides:
In a proceeding for dissolution of the marriage or legal separation, or in a proceeding for disposition of property following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse or lacked jurisdiction to dispose of the property, the court shall set apart to each spouse such spouse's nonmarital property and shall divide the marital property and marital debts in such proportions as the court deems just after considering all relevant factors including:

(1) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the spouse having custody of any children;
(2) The contribution of each spouse to the acquisition of the marital property, including the contribution of a spouse as homemaker;
(3) The value of the nonmarital property set apart to each spouse;
(4) The conduct of the parties during the marriage; and
(5) Custodial arrangements for minor children.

marital property. *Silcox v. Silcox*, 6 S.W.3d 899, 904 (Mo.banc 1999). While the trial court's division of marital property need not be equal, it must be fair. *Id.* The trial court's decision should be affirmed so long as the division of property is not so unduly weighted in favor of one party as to constitute an abuse of discretion. *Id.* at 904–05. An abuse of discretion will be found only if the award is so arbitrary or unreasonable that it indicates indifference and lack of proper judicial consideration. *Id.* at 905.

### Discussion

■ Appellant complains that when the trial court divided the parties' marital property, Respondent received marital property to offset the value of Appellant's anticipated CSRS retirement benefits, but Appellant did not receive any marital property to offset the value of Respondent's anticipated Social Security retirement benefits. In addition, Appellant asserts that the value of Respondent's anticipated Social Security benefits was not even taken into consideration in making a reasonable division of the marital property in the trial court's judgment.

The Social Security Act, 42 U.S.C. sec. 407(a) (1994), provides:

The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

Construing this statute, the United States Supreme Court has held that this statute imposes "a broad bar against the use of any legal process to reach all social security benefits," *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973), and that social security benefits are not subject to equitable distribution. *Flemming v. Nestor*, 363 U.S. 603, 609–10, 80 S.Ct. 1367, 4 L.Ed.2d 1435 (1960). The *Flemming* Court stated that "[t]o engraft upon the Social Security system a concept of 'accrued property rights' would deprive it of the flexibility and boldness in adjustment to everchanging conditions which it demands." *Id.*

Section 169.572 provides that courts are not to divide social security benefits in dissolutions of marriage:

1. No court shall divide or set aside any federal old-age, survivors or disability insurance benefit provided to any party pursuant to the federal Social Security Act, 42 U.S.C. sec. 200 et seq., in any proceeding for dissolution of marriage.
2. Subsequent to August 28, 1991, a court of competent jurisdiction may divide the pension, annuity, benefits, rights, and retirement allowance provided pursuant to this chapter between the parties to any action for dissolution of marriage, to the same extent and in the same manner the court may divide any federal old-age, survivors or disability insurance benefit of the parties provided pursuant to the federal Social Security Act.

Thus, it is clear from the above cited authority that Respondent's social security benefits are not marital property, and are prohibited from being divided or set aside as such in the dissolution proceeding at bar.

However, the issue remains as to whether the trial court should have considered the projected value of those benefits, as Respondent's separate property, in fashioning its division of marital property in a fair manner. Our state Supreme Court has held that it is the duty of the trial court to consider the value of nonmarital property to each spouse in its division of marital property. *Silcox*, 6 S.W.3d at 905.

*Silcox* involved a Missouri teacher's retirement account, which under Section 169.572.2 is treated in the same manner as social security benefits. *Id.* at 902; see also *Bohon v. Bohon,* 102 S.W.3d 107, 110 (Mo.App. W.D.2003).

Appellant contends that the trial court "declined to even consider either spouse's social security benefits." By *her* social security benefits, of which she anticipates getting none, Appellant means that the trial court should have calculated a theoretical amount of social security benefits for her, if she had been qualified to get them. On the contrary, the record demonstrates that the issue of such benefits was presented to the trial court in the form of substantial testimony and evidence regarding Respondent's anticipated social security benefits, and Appellant's theoretical social security benefits. The transcript demonstrates that the trial court remarked on the nature of social security and posited its understanding that social security is not a vested benefit, is not guaranteed, and can be revised or taken away altogether by the government. The record shows the trial court gave this matter extensive consideration, and such consideration is also reflected in the trial court's discussion of it in its Findings of Fact, Conclusions of Law and Judgment/Decree of Dissolution of Marriage dated May 7, 2007.

The trial court declined Appellant's request to offset Respondent's anticipated social security benefits against Appellant's theoretical social security benefits or her CSRS pension. This offset method has been used in some other states in the interest of the fairness in righting a perceived inequity in treating one partner's pension as marital property and the other party's social security as untouchable. See, e.g., *Kelly v. Kelly,* 198 Ariz. 307, 9 P.3d 1046, 1048 (2000); *Cornbleth v. Cornbleth,* 397 Pa.Super. 421, 580 A.2d 369,

371–372 (1990); *Cohenour v. Cohenour,* 696 A.2d 201, 204 (Pa.Super.1997). We note no Missouri cases that have employed or endorsed this method.

Other jurisdictions, on the complete opposite end of the spectrum, refuse to consider social security *in any way* at divorce. See, e.g., *Wolff v. Wolff,* 112 Nev. 1355, 929 P.2d 916, 921 (1996); *Olson v. Olson,* 445 N.W.2d 1, 11 (N.D.1989); *In re Marriage of Swan,* 301 Or. 167, 720 P.2d 747, 751 (1986). These jurisdictions generally rely on *Hisquierdo v. Hisquierdo,* 439 U.S. 572, 587–89, 99 S.Ct. 802, 59 L.Ed.2d 1 (1979), which held that benefits under the Railroad Retirement Act could not be divided as community property, nor could an offset of other property be given to the nonparticipating spouse, relying on an anti-attachment clause prohibiting the anticipation of benefits.

The Arizona court in *Kelly,* in justifying its method's perceived conflict with *Hisquierdo,* theorized that although the anti-attachment language in the Social Security Act is similar to that of the Railroad Retirement Act, it is not identical, and since the *Kelly* court was neither dividing social security benefits nor technically providing an offset, it was not violating *Hisquierdo.* *Kelly,* 9 P.3d at 1049.

Appellant maintains that it was error for the trial court to not consider Respondent's social security benefits as his nonmarital property, in balancing a fair division of the parties' marital property. Respondent counter-argues that Missouri courts have held that "social security benefits fall outside the statutory definitions of 'marital' and 'non-marital' property," citing *Mallams v. Mallams,* 861 S.W.2d 822, 824 (Mo.App. W.D.1993). Although the language of *Mallams* does characterize social security benefits as neither marital nor separate property, its holding falls in line with a long line of Missouri cases that

firmly hold that social security benefits (or teacher retirement benefits, which are treated identically to social security benefits in Missouri), are non-marital property, and are to be considered by the court when dividing the marital property, but not to such a degree that such consideration would have a material impact on the division of marital property. See, e.g., *Rudden v. Rudden,* 765 S.W.2d 719, 720 (Mo.App. E.D.1989); *Gismegian v. Gismegian,* 849 S.W.2d 201, 204 (Mo.App. E.D. 1993); *Kieninger v. Catlett,* 854 S.W.2d 59, 60 (Mo.App. W.D.1993); *Mallams,* 861 S.W.2d at 824–25; *David v. David,* 954 S.W.2d 611, 616 (Mo.App. W.D.1997); *Ludwinski v. Ludwinski,* 970 S.W.2d 892, 894 (Mo.App. E.D.1998); *Holt v. Holt,* 976 S.W.2d 25, 29 (Mo.App. W.D.1998); *DeMayo v. DeMayo,* 9 S.W.3d 736, 741 (Mo. App. W.D.2000); *Silcox,* 6 S.W.3d at 902–905; *In re Marriage of Woodson,* 92 S.W.3d 780, 784–85 (Mo.banc 2003); *Moen v. Moen,* 140 S.W.3d 611, 614–15 (Mo.App. W.D.2004).

We find that the trial court considered Respondent's social security benefits as his non-marital property when dividing the parties' marital property, as is evidenced by the transcript and substantial testimony and evidence presented on it. We also find that the trial court considered Respondent's social security benefits in a way that was proper, i.e., in a fashion that would not have a material impact on its division of marital property. This finding is based upon our close and detailed examination of the trial court's division of marital property between Appellant and Respondent, which is quite equitable, with an approximate total marital property worth $932,542.00 going to Respondent; and an approximate total marital property worth $884,430.00 going to Appellant. If the trial court had considered Respondent's social security in such a way that Appellant argues it should have, then such consideration would have had a material impact on

the equitable division of marital property in this case, which is disallowed under Missouri law.

Based on the foregoing, we find that the trial court did not abuse its discretion in dividing the parties' marital property. Accordingly, Appellant's Point on Appeal is denied.

### Conclusion

The judgment of the trial court is affirmed.

ROBERT G. DOWD, JR., P.J., and CLIFFORD H. AHRENS, J. concur.